Plaintiff was in the employ of the Compressed Industrial Gases, Incorporated, as a welder on and before June 14, 1937. He was receiving as wages $63 per week. On the above date, while performing the duties for which he was employed and in the course and scope of his employment, an accident happened and plaintiff's leg was broken just above the ankle. Both bones were broken and it was described as a comminuted fracture. The fact that he was injured in the course and scope of his employment and that he was entitled to the maximum weekly compensation allowed *Page 198 
by law is not disputed by his employer.
Plaintiff was taken to the sanitarium where he remained for fifty-seven days and was then removed to a private residence in order to save expenses, but was at all times under the treatment of a physician designated by his employer. Plaintiff's leg was placed in a cast which was not removed from the leg until September 29, 1937. From that date on plaintiff could not get around at all without the use of crutches.
On October 4, 1937, at the request of the attorneys and agents of his employer and its insurer, the doctor in charge gave to them a report on plaintiff's condition. This report was as follows:
"Mr. Val Irion, "Giddens-Lane Building, "Shreveport, Louisiana.
"In re: H.F. Craig v. Compressed Industrial Gases
"The cast on the injured leg on the above mentioned was removed on September 29, 1937 and an x-ray examination made of the injured ankle. X-ray report is as follows: `A fair amount of callous formation in the old comminuted fractures in the lower 3d of the bibia and fibula. A spicule of bone from the posterior lateral aspects of the inferior tibical fragment that is rotated slightly posterior and displaced laterally and upward about 1/2 inch in either direction. A marked atrophy of the distal fragment and bones of the foot, probably due to non-use.' There is a fairly good amount of callous formation of this fracture and the fragments appear, under the flouroscope, to be firmly stuck together.
"Daily massage and heat treatments in the office will now be instituted in order to hasten the return of function to this joint. There will probably be considerable permanent disability as a result of this fracture, however, at this time I cannot make any estimate as to what his disability will be.
"Yours very truly, "W.P. Addison, Jr., M.D."
On November 4, 1937, a joint petition of plaintiff, his employer and the compensation insurer was presented to the district judge of the Twenty-sixth Judicial Court of Louisiana in which it is set out that the employer and the insurer contend that plaintiff's injury has healed, while plaintiff contends that his leg is permanently injured. It further set forth that plaintiff had been paid compensation at the rate of $20 per week for 20 weeks, or $400, and that the insurer had expended $104.50 on plaintiff for medical attention and that, after considering their respective claims, balancing the chances of loss against the hope of gain in the event of litigation between them, they had agreed to settle their differences for an additional $104.50 to make a total medical bill of $250 and $1,394.20, making a total payment of $1,339.70 which, with the previous payments of $400 and $104.50 for this account, would make a total of $2,044.20. The petition prayed that the court approve the proposed settlement. On the same date the district judge signed a judgment approving the settlement after seeing and discussing same with plaintiff. At the time of this settlement, plaintiff was still on crutches and it is now admitted that he was at that time totally incapacitated from performing any labor and the attorney who represented the employer and insurer testified that it was not his intention to convey by the allegations that the injury had healed, that the leg was well or that plaintiff was able to perform labor at that time.
Instead of plaintiff's leg getting better, it grew progressively worse and on February 1, 1938, the leg was amputated about four inches above the ankle. It continued to give much trouble and in April following, it was again necessary to amputate the leg, this time about four inches below the knee and finally on November 3, 1938, a third amputation was necessary, this time above the knee. At the time of the trial of this case below, plaintiff was totally incapacited from following his trade and it is not now seriously contested that he is totally and permanently disabled from following his trade as a welder.
On October 27, 1939, plaintiff filed this suit alleging that the compromise settlement was brought about through fraud practiced upon him by the agents and representatives of his employer and its insurer. He prayed that the judgment approving the compromise settlement be annulled and set aside and that he be awarded compensation for one and one-half times the maximum compensation allowed by law, *Page 199 
less the amount previously paid by defendants, and that the judgment be for a lump sum.
The lower court rejected plaintiff's demands and sustained the judgment of compromise. Plaintiff is now prosecuting this appeal.
At the time the compromise settlement was made plaintiff had the same information as to his condition as did the defendants. The doctor who had attended him from the beginning had informed all of them that plaintiff was totally disabled at that time and that he would be unable to tell the degree of permanency of his disability until at least after one year's time had elapsed from October 4, 1937. He was unwilling to hazard a guess as to whether the disability was totally permanent or not although he did say he was sure there would be some degree of permanency of disability.
It is clear to us, therefore, that plaintiff's condition was not concealed from him by the defendants and that no fraud in this respect was practiced upon him. It is likewise clear to us under the above facts that there was not and could not have been any dispute between the parties as to plaintiff's condition at the time of the compromise settlement or as to the permanency of the disability. If there was it could not have been a true, bona fide dispute for there was nothing on which to base the difference of opinion.
Subsection 9 of Section 8 of Act 242 of 1928, page 362, provides for settlement of compensation claims, where there is no dispute, by a lump-sum settlement, provided the amount due is not discounted more than eight per cent and the settlement is approved by the court. The settlement in this case is null and void under this Section since the discount was far in excess of eight per cent. This is the only Section of the Act under which the claim could have been settled since there was no legal bona fide dispute.
The settlement is also null and void under Section 17 of Act 20 of 1914, as amended by Act No. 38 of 1918, under the authority of the last decision of the Supreme Court of Louisiana, viz., Otto Puchner v. Employers Liability Assurance Corporation,198 La. 921, 5 So.2d 288, 294, decided on May 26, 1941. In that case the Court said: "Compromises are not provided for in any of the various provisions of the act and there is no room for them with respect to the mandatory provisions of the act, consequently they should not be sanctioned except where the letter or spirit of the law justifies them. For an example, where there is a serious and bona fide dispute as to the employer's liability under the act."
It also said: "The only possible matter which could have been uncertain was the duration of plaintiff's disability, and in our opinion it would be in direct violation of the letter and spirit of the act to sanction speculation with respect to the duration of an employee's disability, for the primary object of the act `was to provide an employee, whose wages were discontinued as a result of an injury sustained while serving his master, with funds to subsist on until he could return to work. * * *' Barr v. Davis Bros. Lumber Company, 183 La. 1013, 165 So. 185."
That decision makes it clear that the only compromise settlement that could be legally made under Section 17 of the Act is where there is a legal and bona fide dispute as to whether any compensation is or was ever due under the Act and that a settlement by compromise, based on a dispute as to the duration of disability, is a nullity. It also makes it clear that fraud or error are no longer necessary allegations which must be proved to set aside a settlement under Section 17 of the Act.
Although this decision in effect overrules scores of decisions of the appellate courts of this State; as well as decisions of the Supreme Court, it is the last expression from the highest Court of the State and we are of the opinion it correctly sets forth the spirit and purpose of Act 20 of 1914, as amended.
Plaintiff is therefore entitled to have the judgment of compromise and settlement set aside and is now entitled to recover at the rate of one and one-half times the rate fixed in the Act, which will be $30 a week for 400 weeks, and is entitled to receive this amount in a lump sum, less the amount already paid him in said settlement. Subsection 9 of Section 8, Act 242 of 1928; Puchner v. Employers' Liability Assurance Corporation, supra.
It therefore follows that the judgment of the lower court is reversed and there is now judgment for plaintiff annulling and setting aside the judgment of compromise *Page 200 
and settlement rendered by the Twenty-sixth Judicial District Court on November 4, 1937, on the joint petition of plaintiff and defendant.
It is further ordered, adjudged and decreed that plaintiff have and recover judgment against the defendants, Compressed Industrial Gases, Inc., and the Indemnity Insurance Company of North America, in solido, in the sum of $12,000, with 5% per annum interest thereon from judicial demand until paid, less a credit of $1,794.20 heretofore paid plaintiff by defendants. This credit is the amount paid less the $250 medical and doctor's bills. Costs of both courts to be paid by defendants.
TALIAFERRO and HAMITER, JJ., concur.
 On Rehearing.