Defendant has appealed from a judgment of the District Court in and for Ouachita Parish which set aside a compromise settlement for workmen's compensation in which compromise plaintiff herein was paid $350. The lower court's judgment awarded plaintiff $11.57 per week during disability not to exceed 300 weeks, payments to begin on May 15, 1940, less the $350 paid by defendant under the compromise judgment on August 12, 1940, with legal interest on each payment from maturity until paid. The judgment also fixed the fees of the expert witnesses and taxed them as costs. Plaintiff has answered the appeal praying that the judgment be amended by fixing the period of disability not to exceed 400 weeks.
The joint petition of plaintiff and defendant upon which the compromise judgment was rendered is as follows:
"1. That Curtis Stewart was employed by The Brown Paper Mill Company, Inc., at a weekly wage of $17.80 per week prior to May 15, 1940.
"2. Petitioner Curtis Stewart alleges that on or about May 15, 1940, while working in the scope of his duties and course of his employment for the said Brown Paper Mill Company, Inc., and while unloading wood from railroad cars onto the wood chain commonly called No. 5 Chain and while lifting one stick of wood, he, the said Curtis Stewart, felt a pain in his back, as a result of such lifting, and here alleges that because of such lifting and the strain in connection therewith, he has suffered an injury to the vertebrae of his back.
"3. Petitioner Curtis Stewart further alleges that he reported said alleged accident to Dr. J.Q. Graves, physician for The Brown Paper Mill Company, Inc., his employer, and that following said report he received medical treatment for his said alleged injury.
"4. Petitioner Curtis Stewart avers that as a result of said accident and injury resulting therefrom, he is totally and permanently disabled and entitled to compensation for said injury in accordance with the terms and provisions of the Workmen's Compensation Act of this State, on the basis of such alleged disability.
"5. Petitioner The Brown Paper Mill Company, Inc. avers that the above alleged accident and resultant injuries did not occur in such form and manner as alleged by the said Curtis Stewart as to entitle the said Stewart to Workmen's Compensation benefits under the laws of the State of Louisiana, nor result in the injuries or extent of injuries as alleged by the said Curtis Stewart.
"6. Petitioner The Brown Paper Mill Company, Inc., further avers that if petitioner Curtis Stewart did in fact sustain injury as alleged above, his disability on account of said alleged injury was and is not permanent and total, but only partial and temporary and that such condition could be fully remedied and repaired by medical treatment and attention.
"7. Petitioners each and all aver that in view of the foregoing differences there exist between petitioners matters of dispute and controversy as to facts and other differences in connection with this alleged claim, and particularly differences and disputes as to the extent and scope of the disability alleged and as to the permanency and duration thereof and extent of compensation due therefor, if any, and further differences and disputes as to whether *Page 629 
or not the alleged injury resulted from such an accident in the course of employment as to be compensable under the laws of this State.
"8. Petitioners further aver that in view of the above and foregoing differences and disputes, they have agreed to compromise and settle this said claim and to compromise the factual differences and disputes existing between them, and that having weighed the chances of loss against the chances of gain they, the said petitioners, have agreed to full compromise settlement of the claim and dispute between them, all pursuant to the provisions of the Workmen's Compensation Act of the State of Louisiana, providing for such compromise settlement, and particularly Section 17 thereof as amended, on the following terms, to-wit: Payment by petitioner The Brown Paper Mill Company, Inc., to Petitioner Curtis Stewart of the sum of $350.00 and the further sum of $27.98, constituting the aggregate of medical expenses incurred by the said Curtis Stewart, receipt of which said sum as paid for his use and benefit is hereby acknowledged by the said Stewart and full acquittance granted therefor.
"Wherefore, Petitioners having agreed upon the aforesaid terms in full, complete and absolute compromise of their said differences, in compliance and conformity with the provisions of the Workmen's Compensation Law of this State providing for such compromise settlement, do pray that this Honorable Court approve and homologate this compromise agreement and compromise settlement, and do render judgment herein in favor of petitioner Curtis Stewart and against The Brown Paper Mill Company, Inc., in the full sum of $350.00; and in the further sum of $27.98 heretofore paid by the Brown Paper Mill Company, Inc., in behalf of petitioner Curtis Stewart, constituting the aggregate of medical and hospital expenses incurred by the said Curtis Stewart.
"Petitioners further pray that this Honorable Court do order that upon payment and satisfaction of the judgment herein, that the said Curtis Stewart be authorized to release and discharge, fully and forever, The Brown Paper Mill Company, Inc. from any claims of whatsoever kind, character, nature or description, alleged to have arisen out of or in the course and scope of the employment of the said Curtis Stewart with the said The Brown Paper Mill Company, Inc., and from any and all claims arising out of the hereinabove alleged injuries; and that upon the said satisfaction of this said judgment as rendered herein, the said The Brown Paper Mill Company, Inc. be released from any and all claims of whatsoever kind, character or nature arising out of or in the course of employment of the said Curtis Stewart with the said The Brown Paper Mill Company, Inc., and particularly that the said The Brown Paper Mill Company, Inc. be released from any and all claims of whatsoever kind, character or nature arising out of that certain alleged accident, alleged to have occurred on or about May 15, 1940, while the said Curtis Stewart was in the employ of the said The Brown Paper Mill Company, Inc.
"Further prays for all orders and decrees necessary in the premises and for full, general and equitable relief."
The lower Judge who rendered judgment upon the petition is the same Judge who set that judgment aside and rendered a written opinion in the case at bar. It is as follows:
"This is a compensation case and, while some of the questions of fact present a unique situation, the real question in the case is purely a question of law, as the trial court sees it.
"This plaintiff had worked for The Brown Paper Mill Company, Inc. for a number of years and the testimony clearly shows that on the date in question, on which he alleges he was injured, that he was working inside of a railroad box car with one other colored employee of defendant, unloading pulp wood from the car at the plant of the defendant. The testimony further shows that he called the other colored workman from the other end of the car and told him that he had hurt his back in lifting a piece of pulp wood and throwing same from the car. The testimony further shows by Stewart's own statement that he knew, in case of an accident, it was his duty to report at once to the trained nurse at her office at the mill site, her office being a first-aid station. In spite of this knowledge of his part, Stewart says he made no effort to notify the nurse of the accident or to notify his foreman, but decided to go ahead and finish the day's work, which he did. After finishing this day's work his schedule of work called for a rest period of two days *Page 630 
after the day on which he was injured. (In other words he was not supposed to work on those two days). When the third day arrived on which he was to return to work at the mill, a fellow workman who called by his home to bring him to the mill was told that he did not feel well enough to work. The plaintiff, Curtis Stewart, then proceeded to go to the office of Dr. J.Q. Graves, who was the doctor that performed the medical services for the Insurance Company which carried the insurance for the mill. The plaintiff states that he told Dr. Graves that he had hurt his back and asked him to examine him and Dr. Graves told him he could find nothing wrong with his back, and the plaintiff states that he then asked Dr. Graves for a letter sending him to the Charity Hospital in New Orleans and that Dr. Graves gave him a letter and he went to the Charity Hospital in New Orleans.
"Dr. Graves' testimony contradicts this testimony to a certain extent. He states that the plaintiff came to his office but says that he made no statement whatever to him as to an alleged injury; told him he was sick and complained of his back hurting; that he examined him and gave him a letter to the Charity Hospital in New Orleans. Curtis Stewart went to the Charity Hospital in New Orleans, was treated and remained there several weeks. While at the hospital he wrote a letter instructing The Brown Paper Mill to pay his insurance checks to his wife while he was in the Hospital in New Orleans.
"The nurse in charge of the first-aid station at The Brown Paper Mill Company was unable to testify who notified her or from what source the record was made but someone was responsible for the Company reporting Curtis Stewart as being sick, and he therefore drew sick benefit insurance and not compensation payments. When Stewart returned from the Hospital in New Orleans he went to the mill and talked to the nurse and the nurse says that was the first time she found out that Curtis Stewart claimed the disability was from injury and not from sickness, and she immediately reported the same to the insurance company.
"Following this report, Mr. Warren Taylor, representing the insurance company which carried the compensation insurance (he also represented the company which carried the sick benefit insurance), came to see Curtis Stewart, and it is the Court's recollection that the testimony shows that Curtis Stewart was at that time again examined by Dr. Graves. Mr. Taylor and the lawyer for the insurance company then made Curtis Stewart an offer in settlement for the compensation and a compromise settlement was entered into and signed by the Judge of the Fourth District Court who is now sitting as the trial Judge in this case, and alleged that the dispute which they were compromising involved a dispute as to there being an accident and the injury resulting therefrom. Subsequent to that settlement, which was agreeable at that time to the said Stewart, the said Stewart filed the present suit.
"The testimony in this case shows that while in the Hospital in New Orleans, Curtis Stewart was treated for a back injury known as spondylolisthesis. As the Court understands it, this in simple language means injury due to the slipping of a vertebra. There can be no question of this man's injury. There can be no question as to his present disability due to an injury, but as stated at the beginning of this decision, there are some unique questions of fact involved. The records of the Charity Hospital show that this man was treated for exactly the same injury at a period four years previous in the Charity Hospital and, to make matters more complicated, at the time of this first injury he was working for the Brown Paper Mill and, on that occasion, the testimony shows there was no claim made for compensation.
"The Court thinks that the testimony clearly shows that this back had been injured before and the doctors' testimony is agreed in the main as to the question that in such cases the vertebra can in some cases be returned to its proper place and the disability removed. This evidently is what happened in the first injury but whether this man naturally has a weak place in his back or this place was weak from the first injury or what, the testimony shows there was a recurrence of this injury and that at the present time he is disabled from doing any work as a result of it.
"The second treatment did not cure the disability or remove the disability so, as stated at the beginning of this opinion, in the last analysis there is only a question of law involved and that is, — Has Curtis Stewart a right to bring this suit after he had been a party to the compromise settlement *Page 631 
entered into by the parties and approved by this Court?
"There is no claim that there was an accident in the sense that any piece of machinery broke and hit this plaintiff or that any part of the mill structure collapsed or that he fell from same. The accident relied on is simply that in lifting and throwing this pulp wood he threw his back out of place. The courts have held that such an occurrence is accident within the sense of the compensation law.
"The testimony here was that the man who was working with him knew that Curtis Stewart claimed such an accident had occurred. The testimony further is that the foreman had heard about it after Curtis Stewart did not come back to work. And the testimony of another fellow workman, placed on the stand by the defendant in an effort to prove that no one around the mill knew of this accident, was just to the contrary. He testified it was general talk around there that Curtis Stewart had been injured.
"The Court reviews these facts for the reason that the Court cannot say that the defendant was serious in disputing the fact of an alleged accident as the investigation disclosed that the man failed to return to work and he complained of the accident before he left the scene of his employment, but the big question from a legal standpoint at the present in this case is whether there was such a compromise settlement as would place this case in a class which the Supreme Court has said could be compromised. The unique feature of this case, from start to finish as the Court sees it, is the fact that this plaintiff, until this present suit was filed, had never throughout his employment before or since the injury made any claim on the defendant for compensation arising from an injury. In other words, the testimony is clear that he did not report the accident; that he made no claim for compensation and that the only thing bringing the compensation element into the picture was his statement to the nurse on his return that his disability was due to an accident and not sickness and the nurse then reported it as a compensation case and the compromise settlement was entered into.
"As the Court understands the Supreme Court's decision, where there is a real dispute between the workman and the employer in certain cases they can be compromised, but in this case up until the time of the compromise there was no legal dispute; there was no claim on the part of the employee for compensation. What happened in this case, to use the comparison to methods used in land titles, this compromise was in the nature of what we might call a quit-claim deed used to clear up land title. The plaintiff did not seek anything, the defendant sought the plaintiff and insisted that he enter into a compromise.
"For the reasons and the particular nature of the case as set forth above, the Court thinks that the compromise settlement should be set aside and that there should be judgment in favor of the plaintiff and against the defendant granting unto the plaintiff compensation for temporary total disability for a period not to exceed 300 weeks. The compensation to be 65% of the weekly wage of $17.80, the defendant to be given credit for the amount paid in the compromise settlement."
There is no doubt in our minds, after studying the medical and lay testimony in the case including the records of the Charity Hospital in New Orleans, that plaintiff suffered a severe injury to his back in an accident on May 15, 1940, while in the course and scope of his employment with defendant and that at the time of trial below he was totally disabled from performing any work of a reasonable character. This being true, the only question remaining for determination is whether or not he is bound by the compromise judgment rendered on the joint petition of plaintiff and defendant.
The compromise was entered into prior to the decision of the Supreme Court in the case of Puchner v. Employers' Liability Assurance Corporation, 198 La. 921, 5 So.2d 288. This suit was filed and tried before the Puchner decision was upset by the Legislature of 1942, Act No. 96. However, it is defendant's contention that the compromise was binding under the Puchner case decision and Craig v. Compressed Industrial Gases, Inc.,7 So.2d 197, 199, wherein this court said,
"That decision makes it clear that the only compromise settlement that could be legally made under Section 17 of the Act is where there is a legal and bona fide dispute as to whether any compensation is or was ever due under the Act"; contending that the joint petition clearly set up a *Page 632 
dispute as to the occurrence of the accident alleged and claimed by plaintiff.
A careful reading of Articles 5, 6 and 7 of the joint petition for compromise wherein defendant set forth its reasons for compromise discloses that it does not deny an accident occurred but only denies that it occurred in the form and manner as alleged by plaintiff and in Article 7 of said petition defendant set forth the real difference between it and plaintiff in the following language: "* * * and particularly differences and disputes as to the extent and scope of disability alleged and as to the permanency and duration thereof and extent of compensation due therefor. * * *"
All of defendant's allegations must be read together in order to find out what the dispute was and when done it does not disclose clearly that it denied an accident had happened which injured plaintiff.
The lower court found that an accident did occur and that plaintiff was injured in said accident and there was no bona fide dispute as to the occurrence of the accident. We fully agree with the lower court's finding in that respect. It was common knowledge around defendant's plant that plaintiff was injured on the job. After the day plaintiff was injured he never returned to work. He was sent to the Charity Hospital in New Orleans and there placed in a cast for his back injuries. The Hospital report shows a back injury of traumatic origin. He had not made any claim for compensation yet the attorney representing the insurer of the employer sought plaintiff out and succeeded in getting him to join in the compromise agreement. Plaintiff did not have the advice of counsel.
Without going into other details which could only lengthen this opinion we are convinced that the alleged dispute as to the accident and injury received by plaintiff was not a bona fide dispute as to the occurrence of the accident and that the lower court was correct in setting aside that judgment and rendering judgment for plaintiff, however, under the jurisprudence plaintiff was entitled to judgment for 65% of his weekly wages during disability not to exceed 400 weeks instead of not to exceed 300 weeks, as awarded by the lower court, and the judgment is amended in that respect and as amended, it is affirmed with costs.