Plaintiffs, Mr. and Mrs. Herbert M. Wise, brought this suit in the Civil District Court for the recovery of damages sustained by them as a consequence of an automobile accident which occurred on October 28, 1940, when a taxicab, in which Mrs. Wise was riding as a passenger, collided with a truck owned by the Villere Coal Co., Inc., on the riverside roadway of South Claiborne Avenue between Clio and Calliope Streets in the city of New Orleans. The defendants to the suit are Toye Bros. Yellow Cab Company, the owner of the taxicab in which Mrs. Wise was riding, Villere Coal Co., Inc., the owner of the truck which collided with the cab, and United States Casualty Company, the liability insurance carrier of Villere Coal Co., Inc. Mrs. Wise sues in her own right for the personal injuries she received in the accident, for which she claims the sum of $9,000. Mr. Wise seeks to recover the sum of $1,346.08 representing the medical, hospital and drug bills, etc., incurred by him for the treatment administered to his wife.
Plaintiffs allege that the accident resulted from the combined negligence of the driver of the taxicab and the operator of the coal company truck; that the specific acts of negligence of the driver of the taxicab were that he failed to keep a proper lookout; that he endeavored to cut in front of the coal company's truck in order to avoid a barricade which was situated on South Claiborne Avenue near the point of the accident and that he failed to stop his cab when he saw the truck attempting to cross the street; that the driver of the coal company truck was likewise guilty of negligence in that he attempted to pull away from the sidewalk curb of South Claiborne Avenue in utter disregard of on-coming traffic and without giving any signal and that he attempted to cut across to the neutral ground of the street in the face of such traffic without keeping a proper lookout.
After the filing of certain dilatory exceptions, the defendants put the case at issue by separate answers in which they denied any and all liability to the plaintiffs for the consequences of the accident. The coal company and its insurer alleged in their answer that the accident was attributable solely to the negligence of the driver of the taxicab, and the taxicab company alleged that the mishap occurred as a result of the negligence of the driver of the coal company's truck.
On the foregoing issues a trial was had, at which considerable evidence was adduced by the parties in support of their respective contentions. After hearing the evidence, the judge of the District Court, being of the opinion that the accident occurred solely through the fault of the driver of the coal company's truck, gave judgment in favor of Mr. Wise in the sum of $396.08, and in favor of Mrs. Wise in the sum of $3,500, against the coal company and its insurer, in solido. Plaintiffs' suit against Toye Bros. Yellow Cab company was dismissed.
The coal company and its insurer have appealed from the adverse decision and plaintiffs have appealed from that part of the judgment which dismissed their suit against the taxicab company. Plaintiffs have also answered the appeal of the coal *Page 421 
company and its insurer, praying for an increase in the amounts awarded them by the trial judge.
An examination of the record in the case reveals that the only questions presented for review are ones of fact. It is conceded by the opposing defendants that either one or the other or both of them, are responsible to Mrs. Wise for the injuries she received in the accident and also to her husband for the expense borne by him as a result of the treatment administered to his wife. The only other question, which is likewise one of fact, has reference to the amount of the awards granted to the plaintiffs by the trial judge.
The scene of the accident is the riverside roadway of South Claiborne Avenue between Clio and Calliope streets. South Claiborne Avenue is one of the main traffic arteries of the city of New Orleans; it is a paved thoroughfare, separated by a wide neutral ground, and accommodates traffic proceeding to and from Canal Street. The office of the coal company is located on South Claiborne Avenue approximately 100 feet from the corner of Calliope Street. On the day of the accident, the Works Progress Administration was engaged in street repair work at or near the uptown riverside intersection of South Claiborne Avenue and Calliope Street and had, for the protection of workmen, placed barricades on the riverside roadway of South Claiborne Avenue extending from the neutral ground curb towards the sidewalk curb. These barricades occupied approximately two-thirds of the roadway and it was necessary for downtown traffic to drive to the right or near the sidewalk curbing side of the roadway in order to avoid them. In front of the business place of the coal company, there was a 1 1/2 ton truck which had been parked by a colored employee of the company named Major Farries.
The taxicab, in which Mrs. Wise was a passenger, was proceeding down the middle of the riverside roadway of South Claiborne Avenue at a speed of 20 to 25 miles per hour. The driver of the cab states that, when he arrived at the intersection of Clio Street, he slowed down his speed to 12 miles per hour because of the presence of street car tracks at the Clio Street crossing; that he noticed the truck of the coal company parked in front of its place of business; that he continued forward and that, when the front of his cab reached the rear of the truck, the driver of the truck cut across the roadway in the direction of the neutral ground; that he immediately attempted to swerve the cab to the left in order to avoid contact with the truck, but was unable to do so because of the sudden and unexpected movement of the truck across the driveway and that the left portion of the front bumper of the truck struck the right front fender of the cab with such force that the cab immediately stopped at the point of contact with the result that Mrs. Wise was thrown to the floor of the cab and sustained personal injuries.
The colored truck driver of the coal company gives a somewhat different version of the accident. He says that he had parked his truck in front of the company's office for the purpose of getting a drum of oil which he intended to transport in the truck to a machine which was situated on the neutral ground directly opposite to the company's office; that, after he placed the drum of oil in the truck, he went to the driver's seat, turned his wheels to the left with the idea of making a left turn to the neutral ground; that, before he started the truck, he looked to the rear and noticed the taxicab coming down South Claiborne Avenue; that he moved the truck two feet away from the sidewalk curb and then stopped its forward motion in order to permit the cab to pass; that, while the truck was thus situated, the cab came by and swerved sharply to the right and that the left portion of the front bumper of the truck came in contact with the right rear side of the cab. In this statement, Farries is corroborated by another colored employee of the defendant, Villere Coal Company, Inc., named Prentiss Carter, who declares that he was standing in front of the coal company's office at the time the accident occurred.
The testimony of the employees of the coal company does not impress us, as we find it to be not only uncertain in many respects but also that it is in discord with the physical facts of the case. Pictures of the damaged taxicab which were offered in evidence confirm the statement given by the cab driver, — for they reveal that the right front fender of the cab was struck a violent blow by the left portion of the front bumper of the truck. In fact, after a careful analysis of the evidence presented in the case, we entertain no doubt whatever that the accident was attributable solely to the negligence of the driver of *Page 422 
the truck who, we believe, attempted the dangerous maneuver of making a left turn from the sidewalk curb over to the neutral ground in the middle of a city block without paying any attention to traffic proceeding down South Claiborne Avenue. This was evidently the view of the District Judge, for he dismissed plaintiffs' suit with respect to the cab company and held Villore Coal Company and its insurer liable.
Counsel for the coal company and its insurer assert that the district judge erred in accepting the testimony of the cab driver and in rejecting the evidence submitted by Farries and other witnesses testifying for their clients. They proclaim that there are many discrepancies and inaccuracies in the cab driver's testimony which cannot be reconciled; that it is obvious, from the physical facts of the case, that the cab driver was inattentive and that, in attempting to swerve his cab to the right to avoid the barricade on the corner of Calliope Street, he passed too close to the front of the truck.
We cannot agree with counsel. After scrutinizing the testimony of the cab driver with care, we are convinced that his version of the accident is wholly genuine and should be believed. There was no reason for him to swerve to the right when he reached the coal company truck because the barricade, which he was compelled to avoid, was approximately 75 feet away. Moreover, the physical facts make it perfectly evident to us that the accident would not, and could not, have happened in the manner portrayed by the record, if the truck driver had realized that the taxicab was approaching and that it would be hazardous for him to move his truck from its parked position across the roadway and towards the neutral ground. His statement that he pulled away from the curb for a distance not more than two feet is not convincing. In fact, when he was first placed on the stand for cross-examination, he stated that he did not move the truck at all prior to the accident but that he merely turned the front wheels to the left and waited, in a fixed position, for the taxicab to pass. Later, when he was placed on the stand by the coal company, he asserted that he pulled away from the curb approximately two feet and then, upon seeing the taxicab approaching from the rear at a distance of 40 to 50 feet, he stopped the truck in order for the cab to pass. While we find that the number of feet the truck proceeded before it struck the taxicab is uncertain, we think that the evidence, taken as a whole, warrants the deduction that the driver of the truck made an abrupt turn into the street directly in the path of the approaching cab and that, in the emergency thus created, the cab driver was unable to avoid the collision.
Finding that the district judge correctly decided that the truck driver is solely responsible for the accident, we consider the nature and extent of the injuries received by Mrs. Wise. The evidence reveals that, when the collision occurred, Mrs. Wise was thrown forward against the rear of the front seat of the cab, where she received a violent blow to her face and head and that she sustained injuries to her knees when they came in contact with the foot rest on the floor in the rear of the cab. The injuries to her face consisted of a fractured nose, conjunctive hemorrhages and multiple contusions of both eyes, contusions to her lips and her upper anterior teeth loosened. In addition to this, Mrs. Wise claims that her upper left cuspid tooth died as a result of the accident; that she received general body contusions and dislocated the internal semilunar cartilage of her right knee and that she is now suffering from a "trick" or "football" knee.
After the accident, Mrs. Wise was taken to the Baptist Hospital where she remained under treatment of her physician for a period of six days. Thereafter, she was confined to her home for an additional eighteen days undergoing treatment.
The medical evidence respecting the extent of Mrs. Wise's injuries is not in agreement. Her physician, Dr. Shirley Lyons, testified in substance that he was called to attend her on the day of the accident; that she had a broken nose, general contusions of her body and face, injuries to both knees and to her teeth; that he called in consultation Dr. C.L. Brown for her nose injury, Dr. Thomas M. Terry for the injury to her teeth, Dr. John T. O'Ferrall, an orthopedic surgeon, for the injury to her knee and Dr. Jonas W. Rosenthal, an eye specialist; that, after Mrs. Wise was permitted to leave the hospital, he treated her at her home and that she was under his care for several months after the accident.
Dr. C.L. Brown stated that he was called in consultation by Dr. Lyons; that his examination of Mrs. Wise's nose revealed a fractured nasal bone; that there was much crepitus, as well as a great deal of *Page 423 
bleeding; that there was a large bruise under each eye which remained for a period of about ten weeks; that the nose injury was very painful and that after he set her nose he visited her every day for a period of approximately ten days. The witness further states, (in a report to Dr. Lyons on March 22, 1941, some five months after the accident) that Mrs. Wise was still under his treatment because she had suffered from "flare ups" of her sinuses. He attributes this sinus condition to the nose injury and recommended that, if it did not improve, it would be necessary to perform an operation known as a "submucous resection".
Dr. Rosenthal testified that he is an eye specialist and that he was called in consultation by Dr. Lyons to examine Mrs. Wise's eyes after the accident. He says that he found her eyes very swollen; that there were contusions on both lids and that she had numerous hemorrhages beneath the conjunctiva or the covering of both eye balls. While he reports that there was no loss of vision due to the accident, he states that the congested condition remained for a period of six weeks.
Dr. Thomas M. Terry, who was called in consultation to examine the injuries to Mrs. Wise's teeth, stated that her lips were bloodshot and swollen; that her teeth were loose and that it was impossible for her to close her mouth properly for some time; that, on March 25, 1941, he made a second set of X-rays of her teeth and found that the upper left eye-tooth was dead and that the death of this tooth probably resulted from the blow she received in the accident. He says that his advice to Mrs. Wise was to have the dead tooth extracted and that this would entail doing certain additional bridge-work in her mouth which would cost approximately $600.
With respect to the knee injury received by Mrs. Wise, testimony was given by Drs. Lyons and O'Ferrall on behalf of the plaintiffs. Dr. O'Ferrall, who specializes in the treatment of bones and joints, testified that, after examining Mrs. Wise's knee, his conclusion was that she probably had a dislocation or loosening of the internal semilunar cartilage; that this is commonly known as a "football knee"; that it cannot be discovered by means of an X-ray and that physicians have to depend upon the statement of the patient in making their diagnosis. He further asserted that, while there was no swelling in the injured knee at the time he examined Mrs. Wise, there was a quarter of an inch of atrophy of the right calf which would indicate that she was not able to use her leg normally and that the atrophy was attributable to disuse.
Dr. Lyons testified that he visited Mrs. Wise on March 4, 1941; that, at that time, she was complaining of much pain over her knee cap; that there was slight swelling in that region; that it was sore to touch and that she was unable to arise from a sitting position. He further stated that Mrs. Wise visited his office on the following day, complaining still of the knee, and that it was at that time that he referred her to Dr. O'Ferrall. Again on March 28, 1941, Mrs. Wise visited him and reported that her knee caught at times when she was walking. On June 13, 1941, Dr. Lyons reported that Mrs. Wise complained that her knee locked while she was walking in Kreeger's store causing her to fall to the floor. Again on August 4, 1941, Mrs. Wise complained to the doctor that her right knee felt out of place and that it had been hurting her all that day. Again on August 11, 1941, Mrs. Wise visited the doctor and reported that, while walking, she felt a sudden pain in her right knee; that it gave away and that she fell to the ground. Dr. Lyons says that he examined her on that occasion and found that her knee was skinned and bruised from the fall.
Opposed to the testimony submitted by plaintiffs, we find the evidence of Dr. Martin O. Miller and Dr. H. Theodore Simon, witnesses for the taxicab company, and Dr. Guy A. Caldwell, who testified on behalf of Villere Coal Co., Inc., and its insurer. These doctors, particularly Drs. Simon and Caldwell who are orthopedic specialists, state that they examined Mrs. Wise and that, in their opinion, she did not suffer a "trick" or "football" knee because there was no clinical evidence to sustain such a finding. Dr. Caldwell asserts that he examined Mrs. Wise on May 9, 1941; that she was walking without any limp at all; that there was no visible swelling and that the range of motion in the joint was complete and reflected no abnormality whatsoever. He concludes that he was of the opinion that she did not have a displacement of the cartilage of her knee for the reason that the usual torn cartilage repeatedly causes a giving away *Page 424 
of the knee and also a locking of the knee, and that "while I couldn't say absolutely that there had not at some time or other been a displacement of the cartilage, I was sure there was none at the time I saw her, and that it was possible there had been none at all."
To like effect is the testimony of Dr. Simon.
Counsel for the coal company and its insurer strenuously argue that the evidence in this case, when considered as a whole, discloses that Mrs. Wise received mere general contusions and bruises plus two black eyes and a broken nose; that her hurts are neither serious nor permanent and that the award of the district judge in her favor in the sum of $3,500 is highly excessive and out of line with the jurisprudence in this type of case.
Counsel for plaintiffs, on the other hand, say that the award of the judge is inadequate.
The record demonstrates to our satisfaction that the injuries received by Mrs. Wise were not only extremely painful but that they were serious and enduring in their nature. The trial judge evidently felt that the affirmative testimony of Dr. Lyons and Dr. O'Ferrall should prevail over the negative evidence given by Drs. Simon and Caldwell with respect to the injury to Mrs. Wise's knee. We are not prepared to say that he was wrong in his deductions on this feature of the case. In fact, it appears from the evidence that Mrs. Wise has undergone treatment for quite a length of time and that, as late as the month of August, 1941 (almost a year after the accident) she was still having considerable trouble with her knee.
Aside from this, the evidence concerning the injuries to Mrs. Wise's nose and mouth demonstrates that they were not only very painful but that the sinus and tooth trouble she is now experiencing is probably attributable to the blow she received.
Taking all of the foregoing circumstances of the case into consideration, we feel that the award of $3,500 to Mrs. Wise is neither excessive nor inadequate and that it represents fair compensation to her. Nor do we think that the award is out of line with the jurisprudence, — for, as we have often remarked, "it is difficult to gauge with exactness the measure of damages to be given in personal injury cases. * * * each case must depend upon its own particular facts." See Hobbs v. Employers' Liability Assur. Corporation, La.App., 188 So. 191, 196.
Counsel for the coal company and its insurer also make complaint with respect to the award in favor of Mr. Wise in the sum of $395.08, representing doctors, drugs, hospital bills, etc., incurred by him as a result of the accident, submitting that there is no proof in the record to sustain a judgment for that amount.
The point is well taken. Although Mr. Wise maintains that he has actually expended the sum allowed by the district judge on account of his wife's injuries, he has failed, for some reason, to produce evidence to support all of the items claimed in the petition. The only proof submitted by him is as follows: Dr. Lyons, $127, Dr. Terry, $45, value of clothing destroyed, $22.10, drug bills, $4.83, Baptist Hospital bill, $7.80, or a total of $206.73.
In view of this, the judgment in favor of Mr. Wise must be reduced to $206.73. As to the items sought to be recovered, which have not been sustained by proof, his claim is dismissed as of nonsuit.
For the reasons assigned, the judgment in favor of Herbert M. Wise is amended by reducing the amount thereof to the sum of $206.73. In all other respects the judgment appealed from is affirmed at the cost of Villere Coal Co., Inc., and United States Casualty Company.