## COURMIER v. SUPERIOR OIL CO. et al.

### Civil Action No. 1254.

District Court, W. D. Louisiana,
Lake Charles Division.

April 30, 1945.

J. E. Bass, Jr., of Lake Charles, La., for plaintiff.

Thomas F. Porter, of Lake Charles, La., for defendants.

PORTERIE, District Judge.

On May 19, 1938, the plaintiff in the present suit filed in the state district court for the parish of Cameron, State of Louisiana, a suit to recover against the present defendants the sum of $8000, which he claimed was due him under the compensation laws of the state of Louisiana, as com-

pensation for injuries received in an accident which he allegedly suffered on February 15, 1938, while working as a roughneck for the Superior Oil Company.

In June of 1938, the suit for compensation was removed to this court, and on August 18, 1938, a compromise settlement of the suit was entered into by the parties to the suit, with approval of the court shown by a signed judgment.

This is an action to set aside the judgment of this court and then to recover from the defendants the sum of $8000, less $3120, $3000 of which was paid in compromise and $120 of which was paid to plaintiff prior to the compromise settlement.

As grounds for the attack on the judgment, the plaintiff alleges:

1. That at the time of the compromise settlement he was "laboring under a misapprehension as to the law with reference to the said settlement, in that he did not know that under the Workmen's Compensation Law of the State of Louisiana * * *, he was entitled to more than was paid him."

2. That "Plaintiff was mistaken in his belief that he would be able to resume work."

3. That the compromise agreement and judgment were based "upon error of law and fact in that it involved not only speculation as to the extent and duration of plaintiff's disability, viz., that it would continue for 294 weeks from the date of the accident, but also fixed compensation payments at approximately Ten and 20/100 ($10.20) Dollars per week, whereas the proper compensation was the maximum allowed by the Workmen's Compensation Law of Louisiana, i. e., Twenty and no/100 ($20.00) Dollars per week, and was and is null and void, and contrary to and incompatible with the law of Louisiana."

4. That the compromise settlement was one attempted under Section 17 of Act 20 of 1914, as amended by Act No. 38 of 1918; that the defendant contended the plaintiff's disability was not the result of the accident, but was the result of other causes.

The defendants have filed an answer to the present suit to set aside the judgment, their first defense being that the complaint fails to set forth a claim against the defendants upon which relief can be granted.

Under this defense, the defendants urge that the judgment approving the compromise settlement, and which judgment is attacked in the present suit, is res adjudicata, (a) under the state laws and the jurisprudence urged by the plaintiff, and (b) because a judgment of the federal court can only be attacked within the time and for the reasons set forth under the federal law.

By stipulation, the relevant parts of the record of the case in the state court, and of the record after it was removed to the federal court, were filed.

We shall consider under this motion to dismiss, predicated on a plea of res adjudicata, firstly, Item A thereof, that under the state laws and the jurisprudence urged by the plaintiff, the motion should be sustained.

We grant that the state laws are to control in this case. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

We believe that the Louisiana cases in full must be applied by us—even the consequent obligation to set aside and annul the compromise judgment of this federal court, because of the case of Erie v. Tompkins, supra, and the subsequent and dependent case of Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, from which we quote:

"We are of opinion that the prohibition declared in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, against such independent determinations by the federal courts extends to the field of conflict of laws. The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts. Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side. See Erie Railroad v. Tompkins, supra, 304 U. S. at pages 74–77, 58 S.Ct. at pages 820–822, 82 L.Ed. 1188, 114 A.L.R. 1487. Any other ruling would do violence to the principle of uniformity within a state upon which the Tompkins decision is based. Whatever lack of uniformity this may produce between federal courts in different states is attributable to our federal system, which leaves to a state, within the limits permitted by the Constitution, the right to pursue local policies diverging from those of its neighbors. It is not for the federal

courts to thwart such local policies by enforcing an independent 'general law' of conflict of laws. Subject only to review by this Court on any federal question that may arise, Delaware is free to determine whether a given matter is to be governed by the law of the forum or some other law. Cf. Milwaukee County v. M. E. White Co., 296 U.S. 268, 272, 56 S.Ct. 229, 231, 80 L. Ed. 220. This Court's views are not the decisive factor in determining the applicable conflicts rule. Cf. Funkhouser v. J. B. Preston Co., 290 U.S. 163, 54 S.Ct. 134, 78 L.Ed. 243. And the proper function of the Delaware federal court is to ascertain what the state law is, not what it ought to be." 313 U.S. at page 496, 61 S.Ct. at page 1021, 85 L.Ed. 1477.

See, also, Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290, and Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462.

Our first duty, therefore, is to analyze the case of Puchner v. Employer's Liability, 198 La. 921, 5 So.2d 288.

The Supreme Court in that case examined the whole record (the district court and the circuit court of appeals had expressed themselves; the latter with a full opinion on facts and law—199 So. 799) to determine whether or not at the time the compromise proceedings were instituted there was a dispute at law between the plaintiff and his employer relative to the plaintiff's right to recover any compensation. The particular facts analyzed in the case were whether or not the plaintiff was intoxicated at the time of the accident, and also, as to the disability of the plaintiff. The Court came to the conclusion that the alleged intoxication was disproved by the record, and then, 5 So.2d at page 292, says:

"The only possible matter which could have been uncertain was the duration of plaintiff's disability, and in our opinion it would be in direct violation of the letter and spirit of the act to sanction speculation with respect to the duration of an employee's disability, for the primary object of the act 'was to provide an employee, whose wages were discontinued as a result of an injury sustained while serving his master, with funds to subsist on until he could return to work. * * *' Barr v. Davis Bros. Lumber Co., 183 La. 1013, 165 So. 185, 188."

We think the above quotation gives us the legal measure of the Puchner case, and this legal measure we must apply to the instant case.

The first paragraph at the beginning of this opinion gives a part of the recital of plaintiff's first petition in the state court. This petition shows further that the plaintiff was a rough-neck working for the defendant in the drilling of wells for oil, gas, and other minerals, and that while so employed in work at a certain well "the very heavy metal tongs were jerked loose when the driller attempted to tighten the pipe, and hit your petitioner a severe blow across his back from the right side down and across it to the left side; that, immediately, after he was struck, as aforesaid, he walked from the rotary to the opposite side of the derrick and fell." Paragraph 4.

The plaintiff alleges further that he was immediately treated by a local doctor for two or three days, and was then advised to go back to his work; that he did go back to his work on February 21, 1938, at seven in the morning, but was compelled to quit work at three o'clock in the afternoon because of suffering and sickness; that on February 24, 1938, he was brought to a local sanitarium at Lake Charles for an X-ray examination, but that after returning home he had to be immediately brought to the sanitarium again, on February 26, 1938, where he remained in bed, he alleges, until the date of his filing the state suit, to-wit, May 17, 1938; that previously to his beginning work for the defendant on January 11, 1938, he had been subjected to a thorough physical examination by a surgeon of the defendant company and was permitted to go to work.

Then the petition of plaintiff discloses numerous injuries described in the following language:

" * * * that the lick he received across his back, as hereinabove set out, injured him internally, seriously injured his left thigh and groin, his left hip, the muscles of his back and his legs, his left knee and ankle, and the blood vessels of his body; that the lick he received, as aforesaid, inflicted, in addition to the injuries named above, other serious, painful and disabling injuries upon your petitioner." (Paragraph 9.)

Plaintiff further claims that when injured he weighed 173 pounds and that at

the time of filing suit he weighed 110 pounds.

Then follows paragraph 11, which we quote:

"Petitioner, in the alternative, and only in the alternative, further shows that if the accidental injuries he received are not the direct cause of his total and permanent disability, that they were the exciting, aggravating and contributing factor thereto."

This paragraph 11 from plaintiff's original petition in the state court, from being only a flying straw indicative perhaps of the direction from which the wind is blowing, becomes a real gale in the answer of defendants when, after denying the main allegations of the petition, they aver, as follows:

"That plaintiff suffered a slight injury on the date as alleged, but said injury did not disable him for more than five (5) days and at the end of that time plaintiff returned to work and continued to work until he was discharged because of the reduction of the force. It was only after his discharge that plaintiff claimed an injury resulting from said accident and defendants allege that if plaintiff suffered a disability as alleged that it was not caused or aggravated by any accident occurring while in the employ of the Superior Oil Company, and that defendants are not liable therefor."

And with this answer the following letter from Dr. R. Gordon Holcombe is attached and made a part:

"Aug. 16, 1938
"Mr. C. E. Hardin,
"C/O Pujo, Hardin and Porter, Attorneys,
"Weber Building,
"Lake Charles, Louisiana.

"Dear Mr. Hardin:

"I beg to advise that at your solicitation, I examined Mr. Percy Courmier somewhere during the latter part of February or early part of March 1938.

"At this time, as you know, he was under the observation of Dr. Seale. The history given me at the time of visiting this patient was that he was struck in the back in the Bosco Field, as well as I remember, having some straining effect with this injury to his back.

"The visible signs at my visitation were more or less confined to the hip, at which time he had a general sweating of his thigh. It was very evident that he had an acute arthritis, and I could not see any connection of this condition with the injury. At a later date, he developed a semi-condition of his left knee joint, and still later a repetition in the ankle joint.

"In view of the number of joints involved, I necessarily concluded that it was a bacterial infection of the blood stream in effect, and it had no connection whatever with the trauma.

"As you know, Mr. Courmier had a very long siege dating from February to June of this year, and had no permanent defect with his vertebra or his back following the injury. The total disability, therefore, is confined more or less to the three joints already referred to.

"There is going to be a total ankylosis of the hip with some destruction of the bone at this area, and also a complete ankylosis of the knee joint. I was unable at this time to identify the focus causing this infection of his limb, but, casually, I was of the opinion that it was oral in nature.

"As stated before, I do not connect this illness with any trauma either directly or indirectly.

"Yours very truly,
"(Signed) R. Gordon Holcombe"

The Court knows of the fine personal reputation and of the high professional standing of Dr. R. G. Holcombe. His statement is sincere and disinterested. We are satisfied the local attorneys for the plaintiff were of the same mind.

With the legal issues of the case thus drawn, we now come to the joint petition of the plaintiff and defendant, and we quote the following articles:

"2. That the case is one of disputed liability, the plaintiff claiming that his condition, which he alleges caused permanent, total disability, is the result of an accident while in the employ of The Superior Oil Company, and defendants, while admitting that the plaintiff suffered an accident, deny that it was of the severity alleged by plaintiff, deny that plaintiff's condition is one of permanent, total disability, and also deny that plaintiff's condition is the result of the accident as alleged, but claim that it results from an entirely different cause, and one that was in no wise connected with the employment, all of which is shown by the petition and the answer filed herein.

"3. That defendants' denial of the extent of disability and of the fact that what-

ever disability exists is the result of the alleged accident, is based upon the examination and report of competent physicians who have examined plaintiff at defendants' request, and defendant hereto annexes report of Dr. R. G. Holcombe on an examination made by him, and makes the same a part hereof.

"4. That because of the disputed questions of liability and extent of disability, this case is the lawful subject of a compromise, and defendants have agreed to pay and the plaintiff has agreed to accept the sum of Three Thousand ($3000.00) Dollars in addition to One Hundred Twenty ($120.00) Dollars compensation already paid, and the additional sum of Two Hundred Fifty ($250.00) Dollars for medical expenses, making a total payment of Three Thousand, Two Hundred Fifty ($3250.00) Dollars, which represents two hundred ninety-four (294) weeks at the rate of approximately Ten and 20/100 ($10.20) Dollars per week, in addition to medical expenses, these amounts to be in compromise of the question of liability for compensation and the extent of disability."

The most favorable thing that might be said in favor of the plaintiff from the compromise is that it had two bases: (a) Whether or not plaintiff was suffering from an injury arising during or out of his employment, that is, whether or not there was any liability at all, or (b) whether or not the compromise settlement may have been founded also on the duration and extent of injuries to the plaintiff.

██ Our study convinces us that situation (a) may be settled under Section 17 of the Act and situation (b) may be settled only under and controlled by subsection 9 of Section 8 of the Act as amended by Act No. 242 of 1928.

The Puchner case does not do away with Section 17 of the Act, as amended by Act No. 38 of 1918, which specifically provides that the interested parties may "settle all matters of compensation between themselves," and that the settlement shall be reduced to writing approved by the Court and "shall be  *  *  *  in accord with the various provisions of this act  *  *  *."

From the body of the decision we quote:

"Under subsection 9 (formerly subsection 8) of Section 8 of Act No. 20 of 1914, as amended, by Act No. 242 of 1928, *where there is no dispute,* the parties, by agreement, may have the amounts payable as compensation commuted to a lump sum settlement provided (1) the approval of the court is secured, and (2) the amount due is not discounted at a rate greater than 8 per cent per annum. Another form of lump sum settlement has been developed in our jurisprudence under the guise of a compromise whereby the amount payable as compensation may be commuted to a lump sum settlement at a rate of discount greater than 8 per cent per annum. In such cases the parties at interest merely present a joint petition to the court for its approval alleging the existence of a dispute between them and their agreement to settle their difference as therein outlined."

We note what Chief Justice O'Niell has said in his concurring opinion:

"There should not be any more objection to the making of amicable settlements of claims for workmen's compensation than there is for the making of an amicable settlement of any other claim, provided, of course, that the amicable settlement of a claim for a workman's compensation must be made in conformity with section 17 of the Workmen's Compensation Law. And there should not be any objection to the reducing of such a settlement to a cash settlement, or lump sum settlement, providing it is done in conformity with subsection 9 of section 8 of the statute. In fact there are cases where amicable settlements in a lump sum are very advantageous to the injured employee, or to the dependents of a deceased employee, as well as being desired by the employer or his insurer."

We do find that in the instant case there was a serious and bona fide dispute as to the employer's liability, and, concurrently, a speculation on the duration and extent of the plaintiff's disability.

We should examine, also, the several cases which have followed the Puchner case, three in number, and determine their respective significance.

In Langston v. Hanbury, La.App., 11 So.2d 415, upon a judgment of the First District Court, sustaining an exception of want of or no cause of action, dismissing the suit of plaintiff, when essentially the facts were that there never was a question but that the accident had happened and that the legal liability of the defendant had never been placed at issue, the doctrine of the Puchner case was fully applied by the Circuit Court of Appeals and the lower

court was reversed and the case remanded with directions. This case states that the Puchner case "emphatically laid down the principle that the duration of an injured workman's disability could not be made the subject of speculation and could not be foreclosed by compromise." 11 So.2d 419.

A very strong directive is given to us to apply in the instant case in the following language at the same page:

"It is also argued that there was a real dispute between plaintiff here and the defendant as regards liability for any compensation in that defendant contended that the injuries to the foot were not the result of accident but were intentionally inflicted. *Whether this contention has any basis in fact may only be determined by trial on the merits.* Since it appears that plaintiff recovered compensation from the Red Iron Drilling Company, his other employer, in the United States District Court, evidently this defense of no accident, if tendered, was rejected." (Italics ours.)

The second case we are given that has the Puchner case doctrine as a predicate is that of Stewart v. Brown Paper Mill Co., La.App., 11 So.2d 627, where the same judge who signed the compromise was the author of an opinion in the district court for the Fourth Judicial District annulling his own previous compromise judgment. The basis of that decision is that "the big question from a legal standpoint at the present in this case is whether there was such a compromise settlement as would place this case in a class which the Supreme Court has said could be compromised." page 631, supra.

Further, the court, at the same page, establishes the following fact:

"The unique feature of this case, from start to finish as the Court sees it, is the fact that this plaintiff, until this present suit was filed, had never throughout his employment before or since the injury made any claim on the defendant for compensation arising from an injury. In other words, the testimony is clear that he did not report the accident; that he made no claim for compensation and that the only thing bringing the compensation element into the picture was his statement to the nurse on his return that his disability was due to an accident and not sickness and the nurse then reported it as a compensation case and the compromise settlement was entered into."

Indubitably, the decision of the judge in annulling his former judgment is that there was never any legal dispute between the parties whatsoever, and, correctly, he sets aside the former compromise signed by him, and upon appeal the circuit court affirms him, giving the Puchner case doctrine as the ground and, in fact, adding one hundred more weeks of payment to the plaintiff.

The third case is that of Smith v. Maier, La.App., 16 So.2d 682, in which the circuit court affirms the lower court of the First Judicial District, where a former compromise had been set aside. From a reading of the case it is disclosed that there was no actual legal dispute between the parties as to liability as such; the compromise was purely and only a speculation as to how long the disability would last, mutually fixed by the parties.

In the instant case, as we have already outlined, the dominant issue was the legal liability of the employer, vel non. The plaintiff was confronted with ominous evidence on that point: the unqualified position of a reputable doctor, fully conversant with the case and in a position to have observed the physical condition of the plaintiff, that the trauma to plaintiff's back was not connected, either directly or indirectly, with his ailment, acute arthritis. That we believe in the main was the basis for the compromise between the parties. We believe that type of compromise is not only permitted by the Civil Code, Article 3071, but, what is really controlling here, it is permitted by Section 17 of the Act itself.

We admit that in the joint petition for compromise there are mentioned, as if on a parity, the two points (1) liability and (2) duration and degree of disability; and that furthermore after the lump sum of $3000 is definitely stated, and the $120 already paid, and the $250 provided by the Act for medical expenses, added, there is an attempted explanation of the amount of compromise by the statement, "which represents 294 weeks at $10.20 per week."

Does the fact that speculation as to the duration and degree of disability entered into the settlement set aside the whole compromise? In answering this question we must bear in mind the facts and the conclusions of the Puchner case.

We grant that since we have to apply the Louisiana law, the theory of

laches of the common law is not applicable. This is a personal action and alive for ten years.

■ The Puchner case doctrine relies for its soundness upon the theory that a compromise settlement, based solely on the speculation of the duration and the degree of disability, is in violation of public policy and, consequently, null and void. This doctrine is not inflexibly cold for in the opinion of one of the justices, on rehearing, it is stated, when the penalty provision of the Act is not imposed, that:

"We are not unaware of the mandatory provision of the statute with respect to the penalty and were it not for the circumstances in this case we would be compelled to invoke it. The parties attempted to make the compromise believing they were complying with the Compensation Act. It is not disputed that they were acting in good faith. The defendant herein was relying upon certain expressions contained in the cases of Musick v. Central Carbon Company, supra [166 La. 355, 117 So. 277]; Young v. Glynn, supra [171 La. 371, 131 So. 51] and various decisions of the Courts of Appeal to the effect that compromises of the nature involved herein were authorized. There is no question that the defendant was of the impression that Section 17 of the Act authorized the compromise and that it was in no way connected with the provisions of the Act authorizing lump sum settlements."

We believe that this case, since the basis of the compromise is a dual one (legal liability vel non, plus duration and degree of disability) does not fall strictly under the ban of the Puchner doctrine or of the three subsequent circuit court cases, because in each of the four cases there is a total absence of the question of legal liability and in each case the compromise is a speculation solely on the duration and degree of disability.

■ May we ask, in a case such as this one, if the plaintiff is to set aside the former judgment, why he should not be required to return the $3000 to the defendant before he has the right to enter and remain in court seeking the annulment of the judgment of the court, already six years old?

In not one of these four cases has the question of the return of the amount received been made a requisite to the maintenance of the action of annulment of the former judgment. But in the instant case, in the face of the payment of $3000 out of a maximum claim made for $8000, where there was a serious question of legal liability, supported by apparently credible and relevant evidence, for us to permit the plaintiff to set aside a former judgment of compromise made in good faith by all parties and where the plaintiff was represented by competent counsel of high repute, without the $3000 being returned to the defendant, would seem to be certainly unjust, if not illegal. It is futile to say that as a practical result it is quite likely that a judge or a jury would give the plaintiff at least what he has already received. Suppose he does fail legally to establish any liability; the $3000 must be returned. Who gives the guarantee that a subsequent judgment against the plaintiff for $3000 would be good? The plaintiff in his present petition with apparent generosity says he would subtract the $3000 already collected, but this does not satisfy the point.

The requirement is just plain fairness. The following cases will support, if not specifically, at least persuasively, our holding: Johnson v. Shreveport Water-works Co., 1903, 109 La. 268, 33 So. 309; Beck v. Continental Casualty Co., La.App.1933, 145 So. 810; Sly v. New Orleans, Texas & Mexico Ry. Co., La.App.1932, 142 So. 276; Harrison v. First National Life Insurance Company, La.App.1938, 179 So. 123; Ackerman v. McShane, 43 La.Ann. 507, 9 So. 483; Walding v. Caldwell Brothers & Hart, La.App.1940, 193 So. 501; Young v. Glynn, 171 La. 371, 131 So. 51; and Louisiana Civil Code, Art. 3078, 14 Tulane Law Review 282, 289.

An examination of the four cases given to us by able counsel for plaintiff discloses that amounts taken by plaintiff in compromise were insignificant as compared to the final awards made; additionally, there is absence, in at least three out of the four cases, of active legal representation; for any and all of the above reasons, we think that legally, and certainly conscientiously, the instant case is a variation of the Puchner case. We say this, even though personally and officially we have been constantly very sympathetic with labor, and especially in accord with the broad public policy of the acts on workmen's compensation, federal and state.

The general public, or, at least, the business world has not endorsed the Puchner case, for at the very next session of the Louisiana legislature, Section 17 was

substantially changed to avoid the Puchner case doctrine. The present suit would be legally impossible today. See Act No. 96 of 1942.

Accordingly, the Court will allow the plaintiff until June 10, 1945—a period of over thirty days—to return the amount of $3000 to the defendant, or, in default thereof, the Court will sign a judgment then sustaining the motion to dismiss, because the complaint of plaintiff does not set out a case upon which relief can be granted.