No. 205.—HODGE RABUN *v.* WILLIAM H. PIERSON.

The rule which gives to a transaction the authority of the thing adjudged is founded upon the maxim that it is for the interest of the commonwealth that there should be an end of litigation.

A transaction settling the amount due upon notes given for the price of land, movables and slaves, and appearing to have eliminated the slave portion of the consideration, will not be disturbed because the calculations by which such elimination was effected were not exactly accurate, no error of calculation being pleaded.

A transaction fixing the amount due by the debtor at a date certain necessarily excluded testimony offered by him to prove a part payment made two years before such transaction.

APPEAL from the Eleventh Judicial District Court, parish of Bienville. *Watkins,* J. *Jack & Pierson* and *W. B. Egan,* for plaintiff and appellant. *John Young* and *J. D. Watkins,* for defendant and appellee.

HOWE, J. In 1860 W. H. Pierson sold to Hodge Rabun a plantation, slaves and movables attached, for the sum of $29,600, and gave for the price five notes of $5000 each, and one note of $4600, falling due respectively in March of the years 1861, 1862, 1863, 1864, 1865 and 1866. The two notes which matured in 1861 and 1862 were paid. In September, 1865, Pierson obtained an order of seizure and sale on the four remaining notes. Rabun enjoined the sale on various grounds, and among others that the land and movables included in the sale were worth but $9300; that the value of the slaves was $19,300; that he had already paid the value of the land and movables; that he had been deprived of his ownership of the slaves by the proclamation of the President of 1863, and by various acts of Congress, etc., and that he was therefore discharged by failure of warranty from the debt for the price of the slaves.

On the fifth October, 1865, the parties entered into a written transaction, reciting the sale, mortgage, executory proceedings and injunction suit, and their agreement "to settle the matters in dispute in said proceedings." Rabun agreed to pay as follows: $2500 on the fifteenth October, 1865, and $2500 on the first January, 1866. It was then stipulated that on the first payment of $2500 being made the said proceedings should be dismissed and all the notes save the one last falling due of $4600 delivered up to Rabun, which note of $4600 was agreed to be paid as follows: one-third on March 1, 1867, one-third on March, 1868, and the balance March 1, 1869. Sundry arrears of interest were also remitted.

In execution of this contract of transaction the two cash payments therein provided were made; the proceedings therein recited dismissed, and $1000 paid on the note of $4600 March 1, 1867. Further payment being refused, Pierson procured another order of seizure and sale on the note of $4600, less this credit and remitted interest. This pro-

ceeding in turn was enjoined by Rabun, on the ground that the note thus sought to be enforced was a note given for the price of slaves. In answer to this Pierson converted his executory into an ordinary proceeding, and prayed for judgment accordingly. There was judgment in his favor as prayed for and Rabun appealed.

From this statement it appears that at the time the transaction was made Rabun was indebted to Pierson in a considerable amount. The unpaid notes included the prices of land, slaves and movables, and nominally amounted to nearly $20,000, with large arrears of interest. The value of the slaves, being alleged to be to that of the other property as about two to one, we may say, by way of approximation, that there was due to Pierson, on Rabun's own showing, about six or seven thousand dollars. The question of the validity of slave notes was entirely unsettled, and the question of liability on notes with the mixed consideration of land and slaves was not finally determined by this court until the latter part of the year 1869. 21 An. 757.

The circumstances then presented a proper opportunity for a transaction, which is a written agreement between two or more persons who, for preventing or *putting an end to a lawsuit*, adjust their differences by mutual consent in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing. R. C. C. 3071. But this transaction is now attacked by Rabun, the plaintiff in this case. He insists that the note in suit was given for the price of slaves, and that its nullity not being expressly mentioned in the transaction, can still be pleaded.

*First*—The note in suit was not, as we have seen, a note given for slaves alone, but for lands, movables and slaves. The effect of the transaction was to eliminate from the controversy between the parties the slave portion of the debt, and to leave due the portion which resulted from the sale of land and movables. The parties did for themselves, evidently, what the law would have done for them; what the law did for the litigants in the case of Sandidge v. Sanderson. The amount thus determined was represented by two payments to be made in cash, and by the note in suit to be paid in three installments. The note in suit thus became by solemn agreement a representative for its face value of a debt resulting from a transaction, and having, as to all events happening before its date and included in its terms, the authority of the thing adjudged. C. C. 3078; C. N. 2052.

"Quand la paix et l'harmonie sont troublées parmi les citoyens, il est pour les rétablir trois moyens ouverts aux parties:

"La voie judiciaire qui soumet leurs débats à l'autorité publique.      *      *      *      *      *      *      *      *      *

"La voie de l'arbitrage qui leur donne des juges amiables et de leur choix.      *      *      *      *      *      *      *      *      *

"Enfin, la voie des transactions qui les rend elles-mêmes leurs propres arbitres." Gillet, Discours, 20 mars 1804.

" Les transactions se font sur une contestation née ou à naître, et les parties ont entendu y balancer et régler leurs intérêts. C'est donc un jugement que les parties ont prononcé entre elles, et lorsqu'elles se sont rendu justice, elles ne doivent plus être admises à s'en plaindre. C'est l'irrévocabilité de la transaction qui met ce contrat au rang de ceux qui sont les plus utiles à la paix des familles et à la société en général." Bigot-Préameneu, Exposé, etc., 15 mars 1805.

The law which gives to a transaction the authority of the thing adjudged is founded upon the maxim that it is for the interest of the commonwealth that there should be an end of litigation. We do not feel called upon to disturb this thing adjudged by the parties to this suit merely because their calculations may not have been accurate when they plead no error of calculation. C. C. 3078.

*Second*—The plaintiff insists that the nullity of the obligations given for slaves, not being expressly mentioned in the transaction, can still be set up under article 3080 of the Code. To this we reply that the transaction shows that the question of liability on the slave portion of the debt was considered and settled. It makes no difference what theory of law the parties may have entertained at the time. C. C. 3078. As a matter of fact the effect of their compromise was to separate the price of the land and movables from the price of the slaves.

*Third*—The judge *a quo* did not err in excluding evidence offered by plaintiff to prove a part payment in 1863. The transaction in 1865 necessarily excluded such testimony.

Judgment affirmed.