Statement Of the Case.
MONROE, J.
This is an action in damages for personal injuries sustained by the plaintiff through the negligence, as he alleges, of the defendant and its agents. The defendants, by way of exception, pleaded that the matter had been settled by compromise, and after the hearing of evidence the exception was sustained, and the suit dismissed. The plaintiff appeals. From the evidence adduced, it appears that the plaintiff, whilst ■working for the defendant, upon Wednesday, December 11, 190.1, had his leg broken, and was carried to the Charity Hospital in Shreveport, where he received attention, and where upon the following day he entered into a written contract of employment with his present attorneys with reference to a suit for damages. On Friday, December 13th, E. L. Keene, defendant’s superintendent, called on plaintiff at the ho'spital, with a view to effecting a compromise of the claim which it was assumed that he would make, but, not finding him in a condition to discuss, did not press, the matter. On the following day (Saturday} the plaintiff was removed at his own request to the house of Clabe Miller, where he was living when injured (Miller’s wife being his cousin), and the next morning (Sunday) Keene, on behalf of the defendant, called at Miller’s house, and, in the presence of several of the plaintiff’s friends, submitted to him a proposition to pay $100 in compromise of any claim that he might be disposed to assert. This proposition was discussed for some little time by all who were present, after which Keene retired; informing the plaintiff that he would leave him to consider it; and would return later in the day. Thereupon, apparently by consensus of opinion among those who remained behind, Miller sent for Ed. Kennedy, a neighbor and friend, who was able to write, and who, responding at once to the summons, formulated in writing a counter proposition to be submitted to Keene, to the effect that the defendant should pay the plaintiff $150, together with his “running time until he could go to work,” and should also pay his physician’s bill. Upon Keene’s return to the house, about 3 o’clock p. in., he accepted this proposition, save as to the second clause, as stated above, in lieu of which it was stipulated that the plaintiff should be paid $1.50 per day for four weeks; and the written instrument, which he had prepared in advance, was modified accordingly, and duly signed and witnessed, the plaintiff affixing his mark.
It may be remarked in this connection that the defendant had assumed the position that the plaintiff was not in its employ, but was in the employ of one Robertson, who was engaged in doing certain work for it as an independent contractor, and the compromise thus effected related to any claim that the plaintiff might have had against either of them.
Keene had, however, brought with him a check for but $100, expecting to settle for that amount, and he left it with the plaintiff, with the understanding that the latter should send it to the office of the defendant on the following morning, and obtain the cash for it, together with the additional $50 agreed on.' On Monday, December 16th, therefore, Millar presented and surrendered the check for $100 at the office of the defendant, and Keene himself took to the plaintiff another check for $150 in place of it, together with $150 in money, with which he cashed the last check immediately after its delivery to the plaintiff. Upon the occasion of this visit, Keene met one of the counsel whom plaintiff had employed, and there was some conversation between them, in the course of which he was told that they (the counsel) had charge of the plaintiff’s claim, and later upon the same day this suit was filed. Thereafter, upon December 21st, the sum of $9 was paid to the plaintiff, who gave the following receipt and disclaimer:
“Shreveport, La., December 21st, 1901. Received from S. A. Robertson and the Shreveport Waterworks Company nine dollars ($9.00), being one week’s time, at one dollar and fifty cents per day, as per settle *271 ment, adjustment, and compromise signed by them and myself December 15th, 1901.
his “Charles X Johnson. mark
“Witnesses:
“W. R. Goss.
“Leo J. Curtis.
“To the Shreveport Waterworks Company: Referring to the above receipt, and our agreement of December 15th, 1901, and also being informed that a suit has been filed in my name against you for damages (number 7,290 in the district court, Caddo parish), I desire to say that I did not order this suit to be filed, and you are hereby authorized to ask the court to dismiss this suit.
his “Chas. X Johnson. mark
“Leo Curtis.
“W. R. Goss.”
Upon December 28th $9 more were paid, and a similar receipt taken; and so on January 4 and 7, respectively, 1902. On January 10th a check for $300 was drawn by defendant to the order of the plaintiff, and by him indorsed and turned over to his physician in payment of the latter’s bill for that amount. The receipt given by the plaintiff reads as follows:
“$300.00. Shreveport, La., Jan’y 10, 1902. Received from S. A. Robertson and the Shreveport Waterworks Company ($300) three hundred dollars in full payment of the medical bill of Dr. Blanchard, as per compromise and adjustment between said parties and myself of date December 15th, 1901, and in full compliance and satisfaction of said agreement; and I hereby authorize dismissal of suit No. 7,296, D. C., First judicial district Louisiana.
his “Chas. X Johnson, mark
“Witnesses:
“J. B. Davis.
“A. D. Rountree.”
As replication is unknown to our practice, there was no attack, by pleading, upon the 'compromise thus set up and established; but the plaintiff seemed to rely upon evidence introduced to show that he is ignorant, and that upon December 15th he was suffering physically, and for those reasons was incapacitated from acting for himself; and tendering in court the sum of $186, as the amount received by him from the defendant, he asked that the compromise be set aside. The evidence, as a whole, however, shows that, whilst the plaintiff can neither read nor write, he is about as intelligent as the average individual of his class; that the compromise was fully explained to, and understood and considered, not only by him, but by his friends; and that, if he was suffering particularly on December 15th, he did not show it whilst negotiating with Keene. Beyond this, it is not proved or suggested that he was suffering at all on December 21st and 28th, and January 4th, 7th, and 10th, when he receipted for installments paid him ■under the compromise, and authorized the dismissal of the suit.
An application for new trial was filed, in which it was merely alleged that the judgment of the district court was contrary to law and the evidence. By a supplemental ■motion, filed four weeks later, the plaintiff tendered $300, as the amount “paid Dr. Blanchard, and unavoidably omitted from the original tender.” No reason, however, appears in the record for the omission referred to, and we understand from the brief of plaintiff’s counsel that it was an oversight.
In this court, when the case was called for trial, in December, 1902, counsel for plaintiff and appellant filed an application in the name of Isaac Bell, dative tutor, in which it is alleged that, after the case had. been tried and judgment rendered in the district court, it was discovered, for the first time, that the plaintiff was not 21 years of age, and that the applicant, thereafter appointed dative tutor, has filed an action, which is now pending in the district court, to set aside the instant suit, and the judgment rendered herein, for that reason. To this are attached several ex parte affidavits concerning the age of the plaintiff, as also a copy of the petition in the action referred to; the whole concluding with the prayer to this court “that the judgment appealed from be annulled and set aside, and that this case be remanded to the district court, in order that justice may be done,” etc.
Opinion.
The plaintiff is a young negro, apparently 21 years old, or over, who, though ignorant, *273 possesses, to all appearances, as much natural intelligence as the average man of his class. He was injured on Wednesday, and his leg had been encased in plaster of paris, and was in that condition on Sunday; and though, as it turned out, it had not been progressing favorably, the evidence fails to show that he was suffering particularly on the day last named. The proposition of compromise was submitted, not to him alone, but to him and his friends; for Miller and his wife and Kennedy and Harris are all colored people, and seem to have been present and to have participated in the discussion. They considered it, and submitted a counter proposition, which, with some modification, was accepted by the defendant; and the latter proceeded at different times thereafter, between December 15, 1901, and January 10, 1902, to discharge the obligations which it had thereby assumed. During that period, and after the plaintiff had been afforded ample opportunity to confer with his counsel and with any one else whom he chose to consult, and though his counsel were aware after December 16th that defendant’s representative had effected or was endeavoring to effect it, the plaintiff no less than six times affirmed the compromise to which he had agreed on December 15th, received payments of money under it, and twice, in writing, authorized the dismissal of this suit. And it was only after he had received all that the defendant had agreed to pay him that he appears to have concluded to repudiate the agreement under which the payments had been made, though even then, as the evidence shows, he did not consent to part with any of the money that he had received. Under these circumstances, the proposition upon which he relies (i. e., that the compromise was the result of undue advantage taken of his ignorance and physical condition) cannot be maintained.
Beyond this, although he had received $-186, no offer was made in his behalf to return $300 of that amount until some weeks after the judgment had been rendered dismissing his suit, which, in effect, involved a demand for the rescission of the compromise under and by virtue of which alone the entire amount had been paid to him. Upon the case as presented, the judgment of the district court was therefore undoubtedly correct.
Counsel for plaintiff, referring to their client and themselves, say in their brief: “His attorneys had no intimation of his legal incapacity to sue, on account of his minority, until after said suit was tried and judgment rendered on the exception in the district court; and said attorneys still had the question of his minority under consideration at the time the order of appeal was given, and the appeal was made to the supreme court.”
We do not for a moment question the verity of this statement, but the record shows that the judgment was “rendered” March 19th, that a motion for new trial was filed March 26th, and that a supplemental motion for new trial was filed April 26th; and, for aught that appears in the present application, the question of the age of the plaintiff had been suggested to the counsel, and might have been called to the attention of the district court, before the judgment so rendered became final. If, however, no intimation as to the alleged minority of the plaintiff (which the defendant denies) reached his counsel until after the judgment of the district court had become final, and if, as is quite possible, they intended to convey that idea to this court, we are still unable to see our way to the granting of the request to remand the case, since, in the absence of any specific law upon the subject, it would be necessary to predicate such action upon the conclusion (which we are unable to reach) that the interests of justice demand that such action should be taken.
The application to remand is therefore denied, and the judgment appealed from is affirmed, at the costs of the appellant.