**BECK v. CONTINENTAL CASUALTY CO.**

No. 4470.

Court of Appeal of Louisiana.
Second Circuit.

Feb. 6, 1933.

J. A. Williams and C. H. McCain, both of Colfax, for appellant.

Hawthorn, Stafford & Pitts, of Alexandria, for appellee.

TALIAFERRO, J.

Defendant issued to plaintiff on September 20, 1927, its policy, No. 6356891, wherein it is stipulated that: "If within 120 days from the date of the accident any one of the following losses shall result to the insured solely from injury such as is before described * * * the Company will pay; * * * for loss of either eye said principal sum."

The principal sum of the policy is $1,000.

This suit was filed by the insured to recover the principal sum of said policy. It is alleged that on or about July 18, 1929, petitioner, while employed as section foreman for the Missouri Pacific Railroad, and while in the discharge of his duties under such employment, received an injury to his right eye which caused the total loss of sight of same. The details of the alleged injury to the eye are set out in full in the petition. Plaintiff alleges that due proof of the injury to and loss of his eye was furnished defendant within the time specified in said policy, but that defendant denied liability.

Before answering, defendant filed a plea of res judicata in bar of plaintiff's suit, wherein it is averred:

"1. That all claims and/or rights, asserted and alleged upon as a cause or right of action by plaintiff, Joseph H. Beck, in his petition filed herein, in which appearer is defendant, have been fully settled, compromised and adjusted by and between the parties; that on or about August 12, 1929, plaintiff, Joseph H. Beck, signed a receipt or release of said claims and/or rights, said release reading as follows, to-wit:

" 'Received of the Continental Casualty Company, $25.00, in full compromise, payment, satisfaction, discharge and release of any and all claims that I, myself, my heirs, executors, administrators, assigns or beneficiaries, now have or may hereafter have against said Company, under Policy numbered, 6356891, for or on account of injuries or illness sustained by me on or about 7-18-29, and any loss that may hereafter result from said injuries or illness.'

"2. Mover shows that the sum mentioned in Paragraph 1 herein was paid by it to said Beck, who received, accepted and retained it."

Trial was had of this plea. The lower court overruled it, but reserved to the defendant the right to present it again for proper determination in the answer to the merits of the case. The court seemed to be of the opinion that the plea could not be determined independently of the merits. In this position, the court was in error. Defendant then answered to the merits, reserving all rights under the exceptions and pleas previously filed. It is admitted that the policy sued on issued

as alleged, and that it was in full force and effect on the date of the alleged injury to plaintiff's eye, but in other respects the alle-gations of the petition are denied.

Before the case was taken up for trial on the merits, defendant filed and urged a plea of estoppel against plaintiff's suit, contain-ing the following averments:

"1. That on or about August 12, 1928, this defendant paid to Joseph. H. Beck, the sum of Twenty-five and no/100 ($25.00) Dollars, in full settlement, accord and satisfaction of all of the claims urged by him in said suit; that said payment was made by check, which was endorsed and cashed by the said Beck; that the said Beck received the money repre-sented by said check and has retained it; that the said check contained, on its reverse side, a statement which reads as follows: [Here follows copy of the above quoted re-ceipt found in the plea of res judicata.]

"2. Petitioner shows that the statement quoted in Paragraph 1 above appears on said check directly over the signature of the said Beck; that said sum was paid by the de-fendant for the purposes and causes express-ed in said release, and was accepted by the said Beck for the same reasons.

"3. Petitioner shows that because of his action in receiving and accepting and retain-ing the funds above referred to, the said Beck is legally and equitably estopped from now as-serting any claims against this defendant, arising out of or connected in any way, with the accident for which he has been paid."

Defendant then refiled and re-urged the plea of res judicata which had previously been overruled. The case was taken up for trial, and evidence introduced in support of the pleas and on the merits. There was judgment sustaining the plea of estoppel and dismissing the suit. From this judgment plaintiff has appealed, and defendant has answered the appeal, praying that the action of the lower court in overruling the plea of res judicata be reversed, and that this court sustain that plea and dismiss plaintiff's suit.

The pleas of estoppel and res judicata have for their basis the same state of facts; that is, that before this suit was filed, all claims for the alleged injury to and loss of the eye by plaintiff had been compromised and set-tled by the payment of $25 to plaintiff, and the execution by him of a receipt therefor, which is copied in both pleas and appears hereinabove, and the retaining by him of the said amount paid pursuant to the said compromise agreement.

Plaintiff's petition does not challenge the validity of the compromise agreement he sub-scribed to when he accepted defendant's check for $25, indorsed and collected same. Above his signature on this check, in plain type, appears an agreement which any one of ordinary intelligence could easily understand.

He admits that he can read and write, though not well educated. He held for many years the position of section foreman of a railroad company, which indicates that he is a man, at least, of fair intelligence and practical ideas. The check was mailed to him; there-fore he had ample opportunity to read the agreement before indorsing and collecting it.

■ Counsel for plaintiff take the position that this check was intended to pay off anoth-er liability of defendant under the contract of insurance, and not for the loss of his eye, and introduced evidence in support of this conten-tion. This evidence was objected to by counsel for defendant on the ground and for the reason that it was an effort to alter, vary, and contradict the terms of a written agree-ment, with no plea of error, and was an at-tempt to collaterally attack a compromise.

The evidence was admitted subject to the objection. The objection should have been sustained. Article 2276, Civil Code; Massey et ux. v. Lbr. Co., 136 La. 688, 67 So. 552; Russ v. Union Oil Co., 113 La. 196, 36 So. 937, 940.

■■ The law in its wisdom, and out of a solicitude to end or avert threatened litiga-tion, encourages the settlement of disputes by compromise; and does not sanction the solemn acts of contending parties settling their disagreements being lightly brushed aside, unless there be present evidence of bad faith, error, fraud, etc. If such were not the law, there would be little incentive to any one to part with anything of value in the desire to escape the harassments of liti-gation. A compromise agreement, when free-ly entered into, is intended to have the bind-ing effect of the thing adjudged. The law has ordained that such transactions have the dignity and force of a definitive judgment, in so far as definitely and irrevocably fixing the rights and liabilities of the parties thereto, as relates to the subject-matter dealt with. It is simply the act of the parties determining their own liabilities and obligations, instead of the court.

Articles 3071 and 3078, Revised Civil Code:

"*Definition—Reduction to Writing Requir-ed.*—A transaction or compromise is an agree-ment between two or more persons, who, for preventing or putting an end to a lawsuit, ad-just their differences by mutual consent, in the manner which they agree on, and, which every one of them prefers to the hope of gaining, balanced by the danger of losing. This contract must be reduced into writing."

"*Force and Effect of Transaction—Errors in Calculation.*—Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected."

Counsel for plaintiff, as reflected from ob-

jections to evidence offered by defendant in support of the plea of res judicata, take the position that, as no suit was pending when the compromise was effected, the compromise could not serve as the basis of the "things adjudged." Article 3071 of the Civil Code, quoted above, negatives this contention, for it plainly says, "for preventing or putting an end to a lawsuit." And article 3078 says that, when the agreement is made, whether it be to prevent or end a suit, as between the parties, shall have "a force equal to the authority of things adjudged." Now article 3556, par. 31, defining "Thing Adjudged," reads: "Thing adjudged is said of that which has been decided by a final judgment, from which there can be no appeal, either because the appeal did not lie, or because the time fixed by law for appealing is elapsed, or because it has been confirmed on the appeal."

The intent and purpose of the law on this subject is to effectually close the door to further controversy about the matter compromised, unless, in consummating the agreement, the law itself in some respects has been transgressed.

"The rule which gives to a transaction the authority of the thing adjudged is founded upon the maxim that it is for the interest of the commonwealth that there should be an end of litigation." Rabun v. Pierson, 23 La. Ann. 696; Antoine v. Smith, 40 La. Ann. 560, 4 So. 321; Johnson v. Shreveport Waterworks Company, 109 La. 268, 33 So. 309.

In the case of Russ v. Union Oil Company, cited supra, it is said: "There is no rule of law, morals, or ethics which denies to the ordinary citizen the right to compromise, with the person asserting it, a claim against him for damages, nor is that right defeated by any previous employment of counsel to prosecute such claim; and, when the compromise is effected in the manner provided by law, it has the force of the thing adjudged, and cannot be attacked collaterally, or for error of law or lesion, in a direct action. Civ. Code, arts. 3071, 3078–3080; Adle et al. v. Prudhomme, 16 La. Ann. 343; Ackerman v. McShane, 43 La. Ann. 507, 9 So. 483; Oglesby v. Attrill, 105 U. S. 605, 26 L. Ed. 1186."

■ It is possibly unfortunate that plaintiff chose to accept so small a sum in settlement of his alleged right of action against defendant for the loss of sight of his eye, but it is clear that he acted advisedly in the matter. The check, containing on the reverse side the stipulations and conditions under which it was issued to him, was sent by mail. He received it from the mail and deliberately indorsed it and collected the money; now retains the amount; and has never—not even in this suit—offered to restore it to defendant. If there was basis for the position taken by plaintiff that he acted under error of fact in accepting this check and collecting same, that question could have been squarely presented by another suit, after discovering as he pretends, from defendant's pleadings herein, that the agreement he had signed was in reality a compromise of the cause of action he seeks to enforce by this suit. This course was pursued in the case of Massey v. Lumber Company, supra. No attack can be made upon such a transaction for any error in law or any lesion. The law does not attempt to concern itself with the adequacy of the amount claimant accepts in settlement of his rights. Civil Code, art. 3078.

The case of Ackerman v. McShane, 43 La. Ann. 507, 9 So. 483, is very much like the present case as to the facts and principles involved.

■ We are of the opinion that the plea of res judicata filed by defendant is good and should have been sustained by the lower court. This makes it unnecessary to pass on the plea of estoppel.

The judgment of the lower court, overruling the plea of res judicata, is hereby reversed, and the plea is now sustained and plaintiff's suit dismissed and his demands rejected, at his cost. As amended by this decree, the judgment of the lower court is affirmed.